FILED
2020 SEP 3 PM 2:21
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARK M. and NINA M., individually and on behalf of CARISSA M., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:18-CV-00018-BSJ<br><br>District Judge Bruce S. Jenkins |

This matter is before the Court on cross motions for summary judgment.[1] The Court heard oral argument on December 11, 2019 and took the matter under advisement.[2] Brian King and Nadiha Hadzikadunic appeared on behalf of Plaintiffs Mark M., Nina M., and Carissa M. Scott Petersen and Michael Bernstein appeared on behalf of Defendant United Behavioral Health ("UBH").

Having considered the parties' briefs, the evidence presented, the arguments of counsel, and the relevant law, the Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS UBH's Motion for Summary Judgment.

## BACKGROUND

During the relevant timeframe, Carissa M. was a minor suffering from multiple conditions, including ADHD, depression, anxiety, post-traumatic stress disorder, reactive attachment disorder, oppositional defiant disorder, and Asperger's syndrome.[3] On May 28, 2015,

---

[1] ECF No. 48, ECF No. 49.
[2] ECF No. 72.
[3] ECF No. 32.

Carissa was admitted to a residential treatment center called Maple Lake following treatment at a wilderness therapy program called Aspiro.[4] On December 17, 2015, Carissa was admitted as an emergency admission to Viewpoint, another residential treatment center.[5] Defendant denied benefits for Carissa's treatment at Maple Lake for the residential treatment level of care, but covered some treatments at the outpatient level of care.[6] Defendant initially denied benefits for part of Carissa's treatment at Viewpoint, but later overturned the decision and covered the duration of her stay at the residential treatment level of care.[7] In this case Carissa seeks reimbursement for treatment at Maple Lake at the residential treatment level and reimbursement for the out-of-pocket costs for treatment at Viewpoint.[8]

I.     The Plan

During the relevant time period, Plaintiff Mark M. was a participant in a fully insured employee welfare benefits plan ("the Plan") under 29 U.S.C. § 1001 et. seq., of the Employee Retirement Income Security Act of 1974 ("ERISA").[9] His daughter, Plaintiff Carissa M. ("Carissa") was a beneficiary of that plan.[10] United Healthcare Insurance Company insured the Plan.[11] United administers claims for mental health benefits through its mental health/substance use administrator, Defendant UBH.[12]

---

[4] ECF No. 32.
[5] *Id.*
[6] ECF No. 48.
[7] *Id.*
[8] ECF No. 49.
[9] ECF No. 32.
[10] *Id.*
[11] ECF No. 48
[12] *Id.*

The Plan provides benefits for covered health services.[13] Covered health services are only available for those services that are deemed "medically necessary."[14] Medically necessary is defined by the Plan as:

> [H]ealth care services provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, Mental Illness, substance-related and addictive disorders, condition, disease or its symptoms, that are all of the following as determined by us or our designee, within our sole discretion.

- In accordance with Generally Accepted Standards of Medical Practice.
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for your Sickness, Injury, Mental Illness, substance-related and addictive disorders, disease or its symptoms.
- Not mainly for your convenience or that of your doctor or other health care provider.
- Not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms.[15]

The Plan provides benefits for mental health and substance use services that are deemed medically necessary by United or its designee, UBH.[16] The Plan excludes benefits deemed not medically necessary even when recommended by a physician.[17] The Plan requires authorization prior to admission when a patient has a scheduled admission to a non-network facility for mental health services.[18]

## II.   Carissa's Background

Carissa began to exhibit behavioral issues as a small child.[19] Because of these behavioral issues, she was asked to leave her preschool and later her kindergarten.[20] Later, she was put on

---

[13] R. 10.
[14] *Id.*
[15] R. 62.
[16] R. 17, 24, 31, 62–63, 68, 80–81, 95–96.
[17] R. 28–31.
[18] R. 80.
[19] ECF No. 32.
[20] *Id.*

3

an individual education program at her school.[21] In 2010, Carissa ran away from home and was

hospitalized after she expressed a desire to harm herself.[22] These behaviors continued and

Carissa was diagnosed with depression, continued to self-harm, and refused to leave her home

without her parents.[23] Between 2010 and 2015, Carissa was hospitalized several times for self-

harming, depression, suicidal ideation, and self-destructive behaviors.[24]

On February 23, 2015, Carissa was enrolled in Aspiro, a wilderness therapy program.[25]

When Carissa was discharged from Aspiro on May 26, 2015, her discharge team recommended

she transition to a residential treatment center.[26]

III. Carissa's Treatment

A. Maple Lake

Carissa was subsequently admitted to Maple Lake, a non-network residential treatment

center, on May 28, 2015.[27] On May 29, 2015, Maple Lake requested authorization for 18 months

of treatment at the residential treatment level from UBH.[28] UBH denied the request and offered

further peer-to-peer review or treatment at the intensive outpatient program level of care.[29]

Maple Lake requested a peer-to-peer review.[30] On June 1, 2015, UBH associate medical director

J.L. Good, M.D., conducted a peer-to-peer review by phone with a Maple Lake designee.[31] The

same day, Dr. Good issued an initial letter denying coverage for Carissa's treatment at Maple

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *See* ECF No. 32, ECF No. 48.
[28] R. 163–66.
[29] *Id.*
[30] *Id.*
[31] R. 167–69.

Lake as not medically necessary.[32] Carissa continued to receive treatment at Maple Lake until

December 17, 2015, when she was transferred to Viewpoint as an emergency admission due to

an escalation of her symptoms.[33] UBH covered many of Maple Lake's claims for clinical therapy

treatments at the outpatient level of care, but denied treatment for the residential treatment level

of care for the duration of Carissa's stay at Maple Lake.[34]

Denial Letters and Appeal Process

The initial denial letter from Dr. J. L. Good on June 1, 2015, stated, in relevant part:

> Your child is not exhibiting symptoms or behaviors that require 24 hour residential care. Your child is able to continue her recovery in a less restrictive treatment setting, such as outpatient care.

> The decision was based on clinical guidance. The guidelines used for this decision are based on the following:

- American Academy of Child and Adolescent Psychiatry. 2001. Child and Adolescent Service Intensity Instrument, Child and Adolescent Care and Utilization System, Version 1.5
- American Association of Community Psychiatrists. (2010). Level of Care Utilization System for Psychiatric and Addiction Services, Adult Version.[35]

Plaintiffs' Level One Appeal

Nina M. ("Nina"), Carissa's mother, wrote a detailed letter requesting a level one appeal

on November 25, 2015.[36] In the appeal letter, Nina addressed several issues she found in the

denial letter, including invalid use of criteria and coverage guidelines, insufficient criteria and

coverage guidelines utilized, and the denial rationale's correlation to the stated criteria

employed.[37] Nina argued that the *Child and Adolescent Service Intensity Instrument* requires the

---

[32] R. 167–70; 3409–10.
[33] ECF No. 32.
[34] ECF No. 48 (citing R. 535–36, 541–43, 548, 553, 571, 3726–74).
[35] R. 1009–10.
[36] R. 973–1007.
[37] R. 974–79.

evaluator to interview the patient, but that Dr. Good never met Carissa or interviewed her.[38] Nina

also argued that the use of the *American Association of Community Psychiatrists (2010) Level of*

*Care Utilization System for Psychiatric and Addiction Services* was not proper in Carissa's case

because it was for adults, not adolescents.[39] Additionally, Nina stated that while UBH only used

its Residential Level of Care Guidelines for Mental Health Conditions, UBH should have

recognized that Carissa had multiple diagnoses including major depressive disorder, persistent

depressive disorder, ADHD, general anxiety disorder, reactive attachment disorder, oppositional

defiant disorder, post-traumatic stress disorder, and autism spectrum disorder.[40] Accordingly,

Nina argued UBH should have used its Residential Level of Care Guidelines for Depressive

Disorders and Autism Spectrum disorders as well as the Guidelines for Mental Health

Disorders.[41]

     After addressing the guidelines referenced in the letter, Nina then challenged Dr. Good's

denial rationale.[42] Specifically, Nina challenged Dr. Good's reference to one of the admission

criteria as a reason to deny coverage: Carissa was not at imminent or current risk of harm to

herself or others.[43] Nina also challenged the Level of Care Guidelines and pointed out that the

guidelines define a Residential Treatment Center for mental health conditions as a "sub-acute

facility-based program," but argued that Dr. Good applied acute care criteria to Carissa's case.[44]

---

[38] R. 974–75.
[39] *Id.* Nina quoted from the utilization system, "The specific needs of special populations, such as children, adolescents, and the elderly will not be adequately addressed in this adult version. It does not claim to replace clinical judgment, and is meant to serve only as an operational guide to resource utilization that must be applied in conjunction with sound clinical thinking."
[40] R. 975.
[41] *Id.*
[42] R. 977–79.
[43] R. 978.
[44] *Id.*

The Plan's Definition of a Residential Treatment Center

The Plan defines a Residential Treatment Center as "a sub-acute facility based program which delivers 24-hour/7-day assessment and diagnostic services, and active behavioral health treatment to members who do not require the intensity of nursing care, medical monitoring and physician availability offered in inpatient."[45]

The Plan further states "The course of treatment in a Residential Treatment Center is focused on addressing the 'why now' factors that precipitate admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently, and effectively treated in a less intensive level of care."[46]

Admission Criteria for Residential Treatment Centers

In addition to meeting the common criteria for all levels of care, a claimant must meet the admission criteria for mental health conditions at residential treatment centers.[47] The Plan sets out the admission criteria as follows:

> 1.2. The member is not in imminent or current risk of harm to self, others, and/or property.
>
> AND
>
> 1.3. The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs or symptoms and/or psychosocial and environmental factors. Examples include:
>
>> 1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.

---

[45] R. 1021.
[46] *Id.*
[47] *Id.*

> 1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care.[48]

Level One Denial Letter

On December 16, 2015, UBH issued a letter upholding denial of coverage for Carissa's treatment at Maple Lake.[49] The reviewing physician, Dr. Beach, wrote, in relevant part:

> Thank you for your very organized, including footnotes, thirty-four page appeal letter. I have carefully reviewed it and the 232 pages of clinical information attached. In your letter you disputed the previous reviewer's determination because your daughter's multiple diagnoses were not considered . . . You also focused on guideline 1.2 of the UBH Level of Care Admission Guidelines for Residential Care which states, 'The member is not in imminent or current risk of harm to self, others, and/or property' as grounds for admission and not valid for a non-coverage determination. You are correct that by itself it is not grounds for a non-coverage determination in your daughter's case. This specific guideline excludes all lower levels of care when a client is at risk and needs an even more restrictive level, such as acute inpatient. However, it also is not grounds, by itself, to qualify for a specific level of care, being applied to all levels less restrictive than acute inpatient, including residential, partial, intensive outpatient, and outpatient services. This then leads to one of the primary considerations for coverage, guideline 1.4 of the Common Guidelines that is applied to all levels of care, "The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care due to acute changes in the member's signs and symptoms and/or psychosocial and environment factors (i.e., the 'why now' factors leading to admission)." This guideline applies to all diagnoses and all levels of care. It is the guideline to which the previous reviewer was referring when he wrote, "Your child is not exhibiting symptoms or behaviors that require 24 hour residential care. Your child is able to continue her recovery in a less restrictive treatment setting, such as outpatient care."[50]

The physician went on to reference notes from Carissa's stay at Aspiro immediately prior to her admission to Maple Lake as part of the rationale:

> You daughter had attended three months of treatment at the Aspiro program before she was admitted for residential treatment at Maple Lake Academy . . . It appears that the client had improved a great deal during her time at Aspiro. Your daughter needed continued care, but there does not appear to be any evidence at that time that this could not have occurred at a less restrictive level.[51]

---

[48] *Id.*
[49] R. 1282–84.
[50] R. 1282–83.
[51] R. 1283.

8

Dr. Beach then referenced the clinical guidelines for the standard of care applied in

Carissa's case:

> The article entitled, "Principles of Care for Treatment of Children and Adolescents with Mental Illness in Residential Treatment Centers," released in June 2010, by the American Academy of Child and Adolescent Psychiatry (AACAP), describes the industry standards (that is the generally accepted practices) for this level of care. The Introduction to the article begins with "The best place for children and adolescents is at home with their families. A child or adolescent with mental illness should be treated in the safest and least restrictive environment and needed services should be 'wrapped-around' to provide more intensive home or community-based services..." This appears to apply very strongly in your daughter's case. From a careful review of the records from Maple Lake Academy, it appears that your daughter's perception of parental expectations was a major issue. Weekly family sessions were often focused on learning to effectively interact with your daughter in a way that would not feed into her perceptions. She appeared to make exceptional progress following a particular family session . . . In summary, your daughter had made progress during three months of treatment at Aspiro. She needed continued care but appeared to be able to obtain this, at least as effectively, at a less restrictive level of care in her home area.[52]

Plaintiffs' Second Level Appeal

On January 29, 2016, Nina wrote a letter requesting a second level appeal from UBH.[53]

Nina argued that Dr. Beach cherry-picked notes from Carissa's treatment at Aspiro to support his

determination that she did not qualify for coverage at the residential treatment level.[54]

Specifically, Nina argued that Carissa's display of a happy affect at times was not indicative of

her overall condition or need for further treatment.[55] In addition to reiterating arguments she

made on her first level appeal, Nina argued that Dr. Beach did not fully address the issues she

raised in her previous letter.[56] For example, Nina stated that while Dr. Beach acknowledged

Carissa's multiple diagnoses, he did not explain why the admissions criteria for mental health

---

[52] R. 1283–84.
[53] R. 1307.
[54] *Id.*
[55] *Id.*
[56] R. 1307–14.

9

conditions was used instead of the criteria for depressive and autism spectrum disorders.[57] Nina

also pointed out that Dr. Beach referenced the article titled "Principles of Care for Treatment of

Children and Adolescents with Mental Illness in Residential Treatment Centers," as a basis for

the rationale that Carissa would benefit more from outpatient therapy while staying at home.[58]

Nina argued that this same article states that patients with diagnoses like Carissa, including

Oppositional Defiant Disorder, "treatment can last many years and may include placement in a

treatment center."[59]

Level Two Denial Letter

On March 3, 2016, UBH sent a letter upholding the denial of benefits. Dr. Saul Helfing

stated, in relevant part:

> [Y]our daughter was experiencing difficult behaviors that required close
> management. She did not require 24-hour monitoring for safety or medical
> reasons. Additionally, the facility did not provide close medical supervision of
> your daughter's case as required for residential coverage and is self-described as a
> therapeutic boarding school by accreditation. Care could have continued with
> outpatient providers and community support.[60]

Plaintiff's Request for External Review

On June 30, 2016, Nina sent a letter to UBH requesting external review of the adverse

benefit determination.[61] Nina reiterated her concern with the guidelines used in Carissa's case

and again demanded an explanation for why those guidelines were used.[62] She questioned why

Dr. Helfing stated that Maple Lake was a therapeutic boarding school and did not provide close

medical supervision of Carissa.[63]

---

[57] R. 1309–11.
[58] R. 1313.
[59] *Id.*
[60] R. 3045.
[61] R. 3034–42.
[62] R. 3035–36.
[63] R. 3039.

External Review Denial Letter

On August 5, 2016, the external review agency MCMC upheld the denial of benefits.[64]

The reviewer's identity was not revealed, but the letter included a blinded biographical sketch

and stated the reviewer was board certified in Psychiatry and Child Psychiatry, an Associate

Professor of Psychiatry at a leading medical school, and a Psychiatric Consultant at a

psychohormonal research unit.[65] The denial letter summarized Carissa's medical history.[66] The

rationale for the denial focused on Carissa's progress at Aspiro prior to her admission at Maple

Lake:[67]

> Progress notes during the period leading up to the current admission do not reflect
> significant behavioral or mood problems. A progress note from the wilderness
> program dated 04/15/2015 reports that the patient's affect was happy. The patient
> and the therapist reviewed progress toward treatment goals, peer interactions,
> academics, communications with home, therapeutic assignments and the patient's
> overall week . . . On 04/28/2015 a therapy notes reports, '*The clients affect was
> happy . . . The client reported that she felt the happiest she has been in a long
> time, which she attributed to 'being myself' and her social contacts with others.*'
> A therapy note on 05/19/2015 reported that '*The client's affect was content . . .
> The client has improved her ability to communicate with peers, but expressed
> difficulty in using tact intercommunication this week.*'"[68]

The letter went on to report that the treatment at Maple Lake was not medically necessary

because:[69]

> Multiple progress notes during the period leading to this admission indicate a
> patient whose mood was bright and who did not present significant acting out
> behaviors. There was no evidence of behaviors that could not have been managed
> in an outpatient setting. The documentation reviewed does not provide evidence
> that the patient's condition could not be safely, efficiently, and effectively
> addressed and/or treated in a less intensive level of care due to acute changes in
> the patient's signs and symptoms and/or psychosocial and environment factors.[70]

---

[64] R. 3707–08.
[65] R. 3709.
[66] R. 3710.
[67] R. 3710–12.
[68] R. 3710–11.
[69] R. 3711.
[70] R. 3711–12.

11

**B. Viewpoint**

On December 17, 2015, Carissa was taken from Maple Lake to Viewpoint by ambulance as an emergency admission.[71] Carissa was discharged on January 22, 2016.[72] UBH initially denied coverage at the residential treatment level from January 6, 2016 forward.[73] On appeal, UBH overturned its decision and covered Carissa's treatment at the residential treatment level for the entire duration of her stay at Viewpoint.[74] Plaintiffs seek reimbursement for costs of treatment at Viewpoint that Plaintiffs paid.[75] UBH argues the costs were allocated according to the Plaintiffs' out-of-pocket cost-sharing obligations under the Plan.[76]

## ANALYSIS

A court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When both parties move for summary judgment in an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)).

The cross-motions for summary judgment present two questions: First, should UBH's decision to deny coverage be reviewed *de novo* or under an "arbitrary and capricious" standard?

---

[71] ECF No. 32.
[72] *Id.*
[73] *Id.*
[74] ECF No. 62.
[75] ECF No. 49.
[76] ECF No. 62.

12

Second, was UBH's decision to decline coverage appropriate under the applicable standard of review?

## I.    <u>Standard of Review for Denial of Benefits</u>

A claim for wrongful denial of benefits under ERISA section 1132(a)(1)(B) is reviewed under a *de novo* standard unless the benefit plan confers discretionary authority upon the administrator or fiduciary to determine benefit eligibility or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989). When such discretionary authority is conferred in the plan, the Court reviews the denial of benefits under an arbitrary and capricious standard. *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quoting *LaAsmar*, 605 F.3d at 796).

The Court finds the proper standard of review is arbitrary and capricious. Here, Plaintiffs do not dispute the plan confers discretionary authority.[77] Plaintiffs instead argue the standard of review should be *de novo* because they were not granted a "full and fair review" under the administrative appeals process, citing procedural defects and UBH's alleged conflict of interest.[78] UBH states the denial of benefits would withstand *de novo* review, but argues the proper standard is arbitrary and capricious because Plaintiffs have not identified significant procedural defects in the appeals process and there is no conflict of interest.[79]

Plaintiffs argue the Court should adopt the Second Circuit's test under *Halo*, which stated the plan administrator "must strictly adhere to the regulation to obtain the more deferential arbitrary and capricious standard of review." *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F.3d 42, 56 (2d Cir. 2016). "[T]he Tenth Circuit has had multiple

---

[77] ECF No. 49.
[78] *Id.*
[79] ECF No. 48.

opportunities to adopt *Halo* and thus far declined to do so." *Kerry W. v. Anthem Blue Cross and Blue Shield*, No. 2:19-cv-67, 2020 WL 1083631, at *4 (D. Utah, Mar. 6, 2020) (citing *Mary D. v. Anthem Blue Cross Blue Shield*, 778 Fed. Appx. 580, 587–92 (10th Cir. 2019)).  As such, this Court does not adopt the *Halo* standard here.

The Court must slide back the scale of deference when a serious procedural irregularity exists in the appeals process. *Martinez v. Plumbers & Pipefitters Nat. Pension Plan*, 795 F.3d 1211, 1215 (10th Cir. 2015). For example, substantial deviations from ERISA mandated time limits in the appeals process is a serious procedural defect and warrants *de novo* review. *LaAsmar*, 605 F.3d at 798 (10th Cir. 2010). Similarly, failing to issue a decision in the appeal process warrants *de novo* review. *Id.* (citing *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 826 (10th Cir. 2008)).

Plaintiffs argue such procedural irregularities exist and justify *de novo* review here.[80] Specifically, Plaintiffs assert: 1) UBH did not substantially comply with ERISA's claim procedure requirements, and thus failed to provide a meaningful dialogue or full and fair review; 2) UBH utilized inadequate tools in the medical necessity determination process; 3) UBH failed to consider Carissa's multiple mental health disorders; 4) UBH incorrectly applied acute criteria to a subacute facility; and 5) UBH was operating under an inherent conflict of interest.[81]

A.  UBH substantially complied with ERISA's claim procedure requirements

First, Plaintiffs argue UBH failed to provide a meaningful dialogue throughout the appeals process or provide a full and fair review.[82] Plaintiffs assert that UBH selectively

---

[80] ECF No. 49.
[81] *Id.*
[82] *Id.*

14

referenced therapy notes from Carissa's previous treatment at Aspiro and ignored her medical records from Maple Lake.[83]

29. C.F.R. §2560.503-1 subsections (g) and (h) require the plan administrator to engage in a meaningful dialogue with the claimant. Subsection (g) requires any notice of denial, among other things, to (1) provide the specific reason for the adverse benefit determination, (2) reference the specific plan provisions on which the determination is based, and (3) for medical-necessity denials, explain the scientific or clinical judgment supporting the determination.

Here, the denial letters met all those requirements. The letters stated the reason for the denial, referenced the guidelines for residential treatment centers, and explained the clinical judgment for the denial.[84] None of the letters violated the requirements of subsection (g). As to Plaintiff's argument that UBH selectively referenced certain therapy notes, there is no indication from the letters that UBH cherry-picked therapy notes from Carissa's treatment at Aspiro while ignoring other medical records.[85] Each letter indicates that the doctor reviewed all the information available at the time.[86]

Next, Plaintiffs argue they were not provided with a full and fair review. Subsection (h) requires the plan administrator to provide claimants a reasonable opportunity to appeal as well as provide a full and fair review of the claim and the adverse benefit determination. 29 C.F.R. § 2560.503–1(h)(1)–(2). A full and fair review includes requirements that the plan administrator must "[p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits," "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant

---

[83] *Id.*
[84] R. 3409–10, 1282–84, 2038–39.
[85] *See* R. 3409–10, 1282–84, 2038–39.
[86] R. 3409–10, 1282–84, 2038–39.

relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination," and provide the claimant "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–1(h)(2)(ii)–(iv). Further, for appeals decided based on medical necessity, the plan must "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii).

Here, the denial letters show that UBH provided Plaintiffs with a full and fair review. As discussed above, Plaintiffs submitted comments, documents, records and other information in the appeals process. The denial letters indicate that UBH took these comments into account. Each denial letter indicates that the reviewer considered all the information available to them. Dr. Beach's letter stated that he carefully reviewed Plaintiff's thirty-four page appeal letter and "the 232 pages of clinical information attached."[87] Dr. Helfing indicated that he had reviewed the appeal letter, the medical records, UBH case notes, and "all aspects of clinical care involved in this treatment episode."[88] Further, when Dr. Good conducted the initial peer-to-peer review, he discussed Carissa's case by telephone with a Maple Lake designee and asked for any additional information that should be reviewed.[89]

Plaintiffs argue UBH failed to consider the comments and information they provided during the appeals process.[90] But UBH did respond to Plaintiff's arguments and explained the application of the plan terms to Carissa's situation. Dr. Beach acknowledged Nina's arguments and explained why UBH determined Carissa could be treated at an outpatient level rather than the residential treatment level. Further, as noted in *Mary D.*, the regulations require the plan to

---

[87] R. 1282.
[88] R. 2038.
[89] ECF No. 48.
[90] ECF No. 49.

take all comments and information into account, but like here, Plaintiffs have not cited to any authority stating that they are required to affirmatively respond to the submissions. *Mary D.*, 778 Fed. App'x. at 589–90.

Plaintiffs next argue they should have had an opportunity to respond to a new denial rationale from the second-level adverse benefits determination letter, that Maple Lake was a boarding school and did not provide close medical supervision.[91] When a new or additional rationale is included in a final adverse benefit determination, the claimant must be provided with the rationale and afforded an opportunity to respond. 29 C.F.R. § 2590.715–2719(b)(2)(C)(2). Plaintiffs state UBH did not give them a chance to provide evidence that Maple Lake was indeed a residential treatment center.[92] However, Dr. Helfing made it clear in his denial letter that Carissa did not meet the criteria for residential treatment and could have been treated at the outpatient level.[93] Assuming Plaintiffs are correct that they should have been afforded an opportunity to respond that was denied to them, this procedural irregularity is not a serious error because Dr. Helfing also upheld the denial based on Carissa's lack of medical necessity.

B.  UBH did not utilize inadequate tools in the medical necessity determination process

Second, Plaintiffs argue the Child and Adolescent Service Intensity Instrument and Adolescent Care and Utilization System requires the reviewer to conduct an interview with the patient, but that UBH did not interview Carissa.[94] But the instrument states "the clinician *should* base their decision on the interview with the child or adolescent," not that the clinician *must* interview the patient.[95] Plaintiffs also argue UBH improperly utilized the adult version of its

---

[91] *Id.*
[92] *Id.*
[93] R. 2038.
[94] ECF No. 49.
[95] R. 1014 (emphasis added).

medical guidelines.[96] The adult version advises the user that the needs of children are not adequately addressed and instructs clinicians to use their sound discretion, stating it is only meant to be used as a guide in "conjunction with sound clinical thinking."[97] Plaintiffs' interpretation of the medical necessity guidelines contradicts the text of the documents. While it may have been ideal for the clinician to interview the patient, it is not required by the guidelines.[98] Similarly, the adult guidelines advise clinicians to consider the special needs of children which are not addressed therein and to use their best judgment and discretion.[99] Plaintiffs do not show a procedural irregularity based on UBH's use of these guidelines.

C.  UBH addressed Plaintiffs' argument regarding Carissa's multiple mental health disorders

Third, Plaintiffs argue that UBH failed to consider Carissa's multiple mental health disorders when it applied the admission criteria for mental health conditions.[100] Dr. Beach addressed their concerns in his denial letter.[101] He stated that one of the primary considerations for coverage was "guideline 1.4 of the Common Guidelines that is applied to all levels of care," which looks to see that the member cannot be "safely, efficiently, and effectively" treated in a less intensive level of care.[102] Dr. Beach explained, "[t]his guidelines applies to all diagnoses and all levels of care."[103] The primary rationale for the denial applied to all diagnoses, including Carissa's multiple mental health diagnoses.[104] If UBH applied guidelines for other mental health conditions to Carissa's case, the reviewer still would have looked to see if Carissa could be

---

[96] ECF No. 49.
[97] R. 1019.
[98] R. 1014.
[99] R. 1019.
[100] ECF No. 49.
[101] R. 1282–83.
[102] R. 1283.
[103] Id.
[104] Id.

treated at a lower level of care. The reviewers all cited the rationale that Carissa could continue

treatment at the outpatient level of care as a primary reason for the denials.[105]

D.  UBH applied the correct criteria for residential treatment centers

Fourth, Plaintiffs assert that UBH incorrectly applied acute criteria to a subacute

facility.[106] Plaintiffs argue that one of UBH's reasons for denial, that Carissa was not in

imminent danger to herself or others, is an admissions criteria for residential treatment centers

and should not have been cited as a denial rationale.[107] But here, as in *Mary D.*, the UBH

reviewers all specified the residential-treatment criteria rather than the acute-inpatient-care

criteria, as the basis for their determination.[108] *Mary D.*, 778 F. App'x at 591. Dr. Beach

explained in his denial letter:

> You also focused on guideline 1.2 of the UBH Level of Care Admission
> Guidelines for Residential Care which states, "The member is not in imminent or
> current risk of harm to self, others, and/or property" as grounds for admission and
> not valid for a non-coverage determination. You are correct that by itself it is not
> grounds for a non-coverage determination in your daughter's case. The specific
> guideline excludes all lower levels of care when a client is at risk and needs an
> even more restrictive level, such as acute inpatient.[109]

As other courts have explained, "the criteria for acute inpatient care and residential treatment

partially overlap." *Id.* Although the reviewers implicitly addressed the acute inpatient care by

finding that Carissa was not suicidal or at imminent risk of self-harm, these findings were also

relevant to determining whether "for purposes of applying the residential-treatment criteria, [she]

was engaging in self-injurious or risk-taking behavior that risked serious harm." *Id.* The Court

---

[105] R. 3409–10, 1282–84, 2038–39.
[106] ECF No. 49.
[107] *Id.*
[108] R. 3409–10, 1282–84, 2038–39.
[109] R. 1283.

finds that UBH did not apply the incorrect medical-necessity criteria and this is not a basis for a claim of procedural error.

E.  UBH's conflict of interest will be considered as a factor in determining whether UBH abused its discretion

Finally, Plaintiffs argue that UBH was operating under an inherent conflict of interest as both the insurer and the claims administrator of the Plan.[110] When such a conflict of interest exists, the court should consider it as a factor in determining whether the plan administrator has abused its discretion in denying benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The significance of the factor depends on the circumstances of the particular case. *Id.* UBH argues that it is not a dual claims administrator, but rather that UBH contains a structural conflict.[111] Specifically, UBH states that United Healthcare Insurance Company is the insurer, and UBH is the Plan's Mental Health and Substance Use Designee.[112] Assuming there is a conflict of interest here, Plaintiffs have not set out evidence to demonstrate that such a conflict of interest effected UBH's benefits determination.[113] The Court will consider the conflict of interest as a factor, but because Plaintiff has not supported its contention with evidence on the record, the factor carries little weight.

F.  The proper standard of review is arbitrary and capricious

In conclusion, Plaintiffs here have failed to identify substantial procedural irregularities in the appeals process. First, UBH provided a full and fair review and substantially complied with ERISA's claim procedures requirements. Second, UBH did not utilize inadequate tools in the medical necessity determination process. Third, UBH did not fail to consider Carissa's

---

[110] ECF No. 49.
[111] *Id.*
[112] ECF No. 62.
[113] *See* ECF No. 49, ECF No. 63, ECF No. 65.

20

multiple mental health disorders. Fourth, UBH applied the correct criteria for residential

treatment centers. Fifth, the Court will consider UBH's conflict of interest as a factor. Taking the

above analysis into consideration, the proper standard of review here is arbitrary and capricious.

## II.     Denial of Benefits

Under the arbitrary and capricious standard of review, "the decision will be upheld so

long as it is predicated on a reasoned basis." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d

1209, 1212 (10th Cir. 2006). An administrator's decision need not be "the only logical decision,

nor even the best decision." *Gundersen v. Metro. Life Ins. Co.*, No. 2:10-CV-00050, 2011 WL

6020575, at *2 (D. Utah Dec. 1, 2011) (citing *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098

(10th Cir. 1999)). The decision "need only be supported by the facts within [the administrator's]

knowledge to counter a claim that it was arbitrary or capricious." *Woolsey v. Marion Labs., Inc.*,

934 F.2d 1452, 1460 (10th Cir. 1991) (citing *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th

Cir.1985)).

The Tenth Circuit has found the denial of benefits arbitrary and capricious where the

decision lacked "substantial evidence," (*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282

(10th Cir. 2002)), which is "such evidence that a reasonable mind might accept as adequate to

support the conclusion reached by the decisionmaker" (*Id.*); where the reviewer failed to explain

how the decision was reached (*DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175

(10th Cir. 2006)); and where the administrator failed to assess all the relevant evidence, and

instead relied on certain evidence while disregarding other evidence (*Caldwell*, 387 F.3d at

1285–86). Further, a decision that lacks any analysis and contains mere conclusory statements is

arbitrary and capricious. *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 746 F. App'x 697, 706

(10th Cir. 2018).

The Court finds UBH's decision was not arbitrary and capricious because it was predicated on a reasoned basis, based on substantial evidence, contained an analysis of the application of the plan language to the facts in the record, and considered the entirety of the information available to the reviewer at the time.[114]

A. UBH applied the correct plan criteria

Plaintiffs argue UBH failed to correctly apply the plan criteria for residential treatment to Carissa's case and argue Carissa's treatment at Maple Lake was medically necessary.[115] UBH properly applied the plan criteria for residential treatment to Carissa's case. As discussed above, there is some overlap between the criteria for residential treatment and acute inpatient levels of care. Dr. Beach explained the overlap between the criteria in his denial letter and further explained how the criteria applied to Carissa's individual case.[116] Each reviewing doctor referenced the Residential Level of Care Guidelines for Mental Health Conditions.[117] Further, there is nothing in the record to indicate that any of the reviewers utilized guidelines for a higher level of care.[118] UBH reviewed Carissa's record and found that Carissa's condition had improved during her stay at Aspiro, and although she needed continued care, there was not evidence at the time that she could not continue at a lower level of care.[119]

---

[114] The Court's decision in this case is distinguished from its decision in *O. et. al. v. United Behavioral Health, JP Morgan Group Health Plan*, No. 1:18-cv-31. In *O.*, multiple letters referred to an "acute mental health rehabilitation setting" when evaluating the medical necessity of treatment at a residential treatment center, which was defined by the plan as a sub-acute facility. The reviewers also linked the word "acute" to the severity of the illness. These statements in *O.*, among other comments, indicated that UBH may have utilized a higher level of care guideline than was appropriate. Here, the reviewers all explicitly referenced the guidelines for the residential level of care, and there was no indication the reviewers utilized guidelines for a higher level of care.

[115] ECF No. 49.

[116] R. 1282–84.

[117] R. 3409, 1282, 2038.

[118] *See*, R. 3409, 1282, 2038.

[119] R. 1282.

B. UBH's medical necessity determination was not arbitrary and capricious

UBH's decision that the residential treatment level of care was not medically necessary was not an abuse of discretion. Defendants reasonably concluded that Carissa did not meet the criteria for residential treatment and could continue care at the outpatient level. Plaintiffs focus on UBH's alleged failure to consider Carissa's multiple diagnoses, UBH's consideration of whether Carissa was an imminent or current risk to herself or others as a reason for denial, and the argument that UBH cherry-picked Carissa's therapy notes.[120] Dr. Beach's letter contains an analysis of the plan language to the record of Carissa's condition. As discussed above, Dr. Beach explained the determination that treatment could continue in a less intensive level applied to "all diagnoses and all levels of care."[121] The guideline instructs reviewers to look for "acute changes in the member's signs and symptoms and/or psychosocial and environment factors (i.e. the 'why now' factors leading to admission)."[122] The reviewers found Carissa was not exhibiting acute changes in her signs or symptoms such that treatment at the residential treatment level was medically necessary.[123]

Plaintiffs argue that Carissa's transfer to Viewpoint indicates that her treatment at Maple Lake was medically necessary. But UBH covered Carissa's treatment at Viewpoint because UBH found Carissa met the "why now" factors such that she needed treatment at the residential level of care. This indicates that UBH applied correct criteria to Carissa's case because when she exhibited acute changes in her signs and symptoms, UBH evaluated her condition, found that she met the criteria, and covered her treatment.

---

[120] ECF No. 49.
[121] R. 1282.
[122] R. 1282.
[123] R. 3409, 1282, 2038.

The reviewers all indicated that they reviewed the entirety of the information available to them.[124] As discussed above, there is no indication from the record, as Plaintiffs argue, that the reviewers cherry-picked therapy records from Aspiro.[125] The Tenth Circuit has stated, "ERISA does not require plan administrators to 'accord special deference to the opinions of treating physicians,' nor does it place 'a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Tracy O. v. Anthem Blue Cross Life & Health Ins.*, 807 Fed. App'x 845, 854 (10th Cir. 2020) (citing *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1325 (10th Cir. 2009)). Administrators do not abuse their discretion "so long as they do not 'arbitrarily refuse to credit . . . the opinions of a treating physician.'" *Id.* (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). Further, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker*, 538 U.S. at 834.

C. Multiple reviewers reached same conclusion

Three physicians – Dr. Good, Dr. Beach, and Dr. Helfing – reviewed Carissa's medical records and treatment history and determined that treatment at the residential level of treatment was not medically necessary.[126] The external review agency, MCMC, also came to the same conclusion.[127] MCMC's review letter stated "Progress notes during the period leading up to the current admission do not reflect significant behavioral or mood problems."[128] MCMC found the treatment was not medically necessary, in part, because "[t]here was no evidence of behaviors that could not have been managed in an outpatient setting."[129] By implication, outpatient was the

---

[124] *Id.*
[125] *See* R. 3409, 1282, 2038.
[126] R. 3409, 1282, 2038.
[127] R. 3707–12.
[128] R. 3710.
[129] R. 3711.

appropriate level of treatment, and a higher level of treatment by whatever name was not. Thus, UBH's determination that Carissa did not meet the Plan criteria for residential treatment was not arbitrary or capricious.

## CONCLUSION

Plaintiffs' Motion for Summary Judgment, including requests for further reimbursement of costs, is DENIED. Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

DATED this 3rd day of September, 2020.

Bruce S. Jenkins
United States Senior District Judge